Argued January 27, affirmed March 9, 1972

TRANSAMERICA INSURANCE COMPANY, *Appellant, v.* SIGNAL INSURANCE COMPANY ET AL, *Respondents,* DeLONG ET AL, *Respondents and Cross-Appellants.*

494 P2d 885

*Cleveland C. Cory,* Portland, argued the cause for appellant. With him on the briefs were Clarence R. Wicks and Davies, Biggs, Strayer, Stoel & Boley, Portland.

*Thomas M. Triplett,* Portland, argued the cause for respondent Signal Insurance Company. With him on the brief were Wayne A. Williamson and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Roy Kilpatrick,* John Day, argued the cause for respondent William A. DeLong. With him on the brief was B. J. Matzen, John Day.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, HOWELL and SCHWAB, Justices.

HOWELL, J.

Plaintiff, Transamerica Insurance Company, filed this declaratory judgment proceeding seeking a declaration of the rights and duties of the parties involved with an automobile liability policy issued by plaintiff and a similar policy issued by defendant, Signal Insurance Company.

The Signal policy was issued to Norman Watson, a resident of Seattle, Washington, and included coverage for Watson while operating a non-owned vehicle with the permission of the owner. The policy issued by plaintiff, Transamerica, insured Western Cartage, Inc., a Seattle trucking firm, and provided omnibus coverage for persons using Western Cartage vehicles "with the permission of the named insured, providing his actual operation * * * is within the scope of such permission."

Watson, on April 26, 1969, while driving a Thunderbird automobile owned by Western Cartage and insured by Transamerica, was involved in a collision in Nyssa, Oregon, with an auto owned and operated by defendant William DeLong. DeLong's wife was killed and his children, defendants Mary and Robert DeLong, were injured. Defendants David Simmons and Phillip Watson, passengers in the Thunderbird driven by Norman Watson, were also injured. After a trial in the United States District Court for Oregon, a judgment for $47,000 was entered in favor of William DeLong as administrator of his wife's estate and against Norman Watson.

In this declaratory judgment proceeding, Transamerica contends that Watson was not an "insured" as defined in its policy with Western Cartage for the reason that Watson's operation of the auto was not within the scope of the permission of the insured, Western Cartage.

The trial court found that Watson was an insured as defined by the omnibus clause in Transamerica's policy with Western Cartage and was also an insured as defined in Watson's policy with Signal.

The trial court found, and Transamerica and Signal agree, that both policies should be construed according to the provisions of the law of the state of Washington. Also, Transamerica and Signal agree with the trial court that the Transamerica policy is construed under Washington law as the primary policy, as it was upon an owned vehicle. Consequently, under Washington law, Transamerica's liability of $500,000 under its policy would have to be exhausted before Signal's liability of $15,000/$30,000 under its

policy limits would become effective.① *Safeco Ins. Co. v. Pacific Indem. Co.,* 66 Wash 2d 38, 401 P2d 205 (1956).

■ All parties agree that this declaratory judgment proceeding should be treated as an action at law. *May v. Chicago Insurance Co.,* 260 Or 285, 490 P2d 150 (1971). Therefore, our scope of review is to determine whether the findings of the trial court are supported by substantial evidence. *Falk v. Sul America Terrestres,* 255 Or 246, 465 P2d 714 (1970).

The sole issue for our consideration is whether Watson was an insured under the omnibus clause in the Transamerica policy. This depends on whether Watson was using the vehicle within the scope of the permission of the insured, Western Cartage.

Watson was employed as a truck driver for Western Cartage in Seattle. In April, 1969, Charles McCanta, president of Western Cartage, was interested in selling a Thunderbird auto. Watson and McCanta discussed the sale, and Watson advised McCanta that he had made arrangements with a local bank for financing the purchase. McCanta suggested that Watson try out the car. On Friday, April 25, Watson had a friend drive him to work, and McCanta gave him the car to drive over the week-end.

After Watson obtained the car, he and his wife decided to drive to Toppenish, Washington, a distance of approximately 170 miles. Upon his arrival in Toppenish he learned his father was seriously ill in a hospital in Boise, Idaho. On Saturday Watson started for

---

① Signal has not filed a cross-appeal from the court's determination of its secondary liability. Subsequent to the entry of the findings of fact, conclusions of law and judgment, the trial court allowed Signal's petition for allowance of all defense costs incurred by Signal in conducting the defense of Watson.

Boise and on the way stopped in Nyssa, Oregon, to see relatives. There he was involved in the serious accident.

There was sharp conflict in the testimony regarding the scope of the permission granted to Watson to use the car.

Watson testified that late Friday afternoon Mc-Canta said to him: "Here's the keys, Norm. Try it out for the week-end and see what you think and we will see you Monday."

McCanta testified that he told Watson: "Well, here are the keys. Now, I want you to take it easy and stay in the Seattle area." McCanta also testified that he would not have given Watson permission to drive to Toppenish or to Boise.

The trial court made a finding that permission was given Watson to try out the car as a prospective purchaser and that there were no other restrictions as to "purpose, place, distance, or time of use." The court also found that McCanta should have foreseen that Watson's test driving as a prospective purchaser for a period of two and one-half days would extend over a distance of several hundred miles as a fair test of the vehicle.

Plaintiff Transamerica contends that under various decisions of Washington appellate courts, Watson's trip to Nyssa, Oregon, was such a substantial and material deviation from the permission granted that it placed Watson outside the scope of the omnibus clause of plaintiff's policy.

The decisions of the Washington appellate courts relating to whether the omnibus clause in similar policies covered the driver of the vehicle are collected in *Grange Ins. Assn. v. Eschback,* 1 Wash App 230, 460 P2d 690 (1969). There, the court segregated prior

Washington decisions on this subject into several categories:

(1) Where liability is imposed on the insurer because of express or implied permission to use the vehicle, e.g., *Safeco Ins. Co. v. Pacific Indem. Co.,* supra, (sixteen-year-old licensed driver held to have implied permission to try out used car which he was interested in purchasing).

(2) Liability is not imposed on insurer where named insured has not expressly or impliedly permitted the use, e.g., *Eshelman v. Grange Ins. Assn.,* 74 Wash 2d 65, 442 P2d 964 (1968), (farm employee checked out of his living quarters, took employer's car—the use of which had been restricted to driving only to and from work—and, in effect absconded. Court held that driver's action could be classified as a theft).

(3) Liability of insurer based on whether deviation from the express or implied use was a major or minor deviation. *Foote v. Grant,* 56 Wash 2d 630, 354 P2d 893 (1960), (driver hired to drive car from Chicago to Seattle by stipulated route deviated substantially from agreed route); *Western Pac. Ins. Co. v. Farmers Ins.,* 69 Wash 2d 11, 416 P2d 468 (1966), (mechanic given permission to repair car and drive it to purchase parts made minor deviation of seven blocks to purchase groceries).

In the instant case the trial court found that there were no restrictions placed on Watson as to the purpose, place, distance or time of use of the vehicle. There was substantial evidence to support such a finding. There was evidence from which it could be found that permission was given to Watson for the use of the vehicle over the week-end. This would imply permission to use it in the manner that a family usually uses its vehicle during that time. A trip of the kind taken by Watson was not an unusual week-end use for such a vehicle. Therefore, the question pre-

sented in many of the Washington decisions of whether the deviation was major or minor is not involved because under the trial court's finding Watson did not deviate in any degree from the permissive use granted.

Additionally, unlike many of the Washington cases cited, the question of whether the driver received permission, express or implied, to use the vehicle is not involved. The president of Western Cartage testified that permission was granted to Watson to use the vehicle over the week-end.

■ There was substantial evidence to support the trial court's findings that Watson was driving the vehicle within the scope of the permission granted; hence he is an insured as defined by the omnibus clause under the plaintiff's policy.

The only remaining issues are presented in a cross-appeal filed by respondents and cross-appellants DeLong. They contend that plaintiff's appeal is frivolous and plaintiff should be assessed the 10 percent penalty provided for in such cases by ORS 19.160. We disagree, and hold the appeal is not frivolous.

■ The second issue raised by the cross-appeal relates to an allowance of attorney fees. After the entry of the declaratory judgment, the cross-appellants filed a petition for supplemental relief for attorney fees. The court denied the petition. As the cross-appellants did not file a counterclaim for the amount of the De-Long judgment and for attorney fees, and did not obtain a judgment against the insurance company for their claim, the cross-appellants are not entitled to attorney fees. *Hardware Mut. Cas. v. Farmers Ins.*, 256 Or 599, 474 P2d 316 (1970); *First Nat'l Bank v. Malady*, 242 Or 353, 408 P2d 724 (1965).

Affirmed.