**PORT SERVICES COMPANY, an Oregon corporation, Plaintiff,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA, a Washington corporation, Defendant.**

**Civ. No. 91–464–JU.**

United States District Court,
D. Oregon.

Jan. 4, 1993.

Peter C. Richter, James F. Dulcich, Portland, OR, for plaintiff.

Thomas A. Gordon, Diane L. Polscer, Portland, OR, for defendant.

## ORDER

REDDEN, Chief Judge:

Magistrate Judge Juba filed his Findings and Recommendation regarding defendant's motions for summary judgment and to strike portions of affidavits on 6 October 1992. Plaintiff filed timely objections to the Magistrate's recommendation that the motion for summary judgment be granted.

■ The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R.Civ.P. 72(b). When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Business Machines,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

I have given the file of this case a *de novo* review. I adopt the Magistrate's Finding and Recommendation.

Oral argument was heard on plaintiff's objections on 21 December 1992. Plaintiff emphasized an argument presented in its supporting memorandum: that a question of fact exists as to whether an insurer was prejudiced by late notice where the insurer also gives other, independent reasons for denying coverage. *See Halsey v. Fireman's Fund Ins. Co.,* 68 Or.App. 349, 681 P.2d 168, *rev. denied* 297 Or. 601, 687 P.2d 795 (1984).

Plaintiff relies on *Halsey,* in which the Oregon Supreme Court found a genuine issue of fact existed regarding prejudice. Among several bases for its reasoning, the court referred to a letter from the defendant insurance company that provided a different ground for denying coverage. The court noted that coverage might have been denied even with timely notice. *Id.,* 681 P.2d at 170. The Court did *not* rule, however, that prejudice cannot be found as a matter of law if it is offered as one among several reasons for denying coverage.

Magistrate Juba concluded that defendant was clearly prejudiced by plaintiff's late notice, since it deprived defendant of any opportunity to investigate the contamination giving rise to the claim, to participate in remedial efforts, or to investigate any claims against possible third parties. I agree with Magistrate Judge Juba that prejudice in this case is clear.

Plaintiff's other arguments in support of its objections have been considered, and fail as well. Plaintiff's objections (doc. # 45) are rejected, and the Magistrate's Findings and Recommendation (doc. # 44) is adopted. IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

JUBA, United States Magistrate Judge.

### INTRODUCTION

This is an insurance coverage case involving liability for environmental pollution. During the 1970's, plaintiff, Port Services Company ("Port Services") leased and operated a vehicle processing facility located on N. Bradford Street in Portland, Oregon. As part of the processing, Port Services decoated the vehicles using a solvent containing, among other substances, kerosene. From November of 1976 through November of 1977, Port Services maintained a commercial liability policy with defendant, General Insurance Company ("General Insurance").

In 1990, the owner of the property, BB & S Development Company ("BB & S") discovered kerosene contamination in the soil at the site. In April, 1990, BB & S notified Port Services of its discovery, and demanded that Port Services pay for BB & S's remediation expenses arising out of the soil contamination as well as for the diminution of the value of its property. In July of 1990, Port Services notified General Insurance of the claim and informed General Insurance of the need to respond quickly to the claim. On February 12, 1991, General Insurance informed Port Services that it was denying coverage for numerous reasons, including the failure of Port Services to promptly notify General Insurance of the claim.

Port Services brought this action on May 20, 1991, contending that defendant was obligated to reimburse Port Services for Port Services' costs incurred in paying and resolving the claim. Jurisdiction is under 28 U.S.C. § 1332.

Defendant moves for summary judgment (docket # 28) and to strike (docket # 36) portions of affidavits submitted by plaintiff.

### STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

### DISCUSSION

Defendant contends that it is entitled to summary judgment because it was not promptly notified by plaintiff and it was prejudiced as a matter of law. I agree.

The insurance policy at issue in this action contained the following notice provision:

> **Notice of Occurrence:** Whenever the insured has information from which the insured may reasonably conclude that an **occurrence** covered hereunder involves injuries or damage which, in the event that the insured should be held liable, is likely to involve this policy, notice shall be sent to the company as soon as practicable.

*See* Exhibit B to Plaintiff's Memorandum In Opposition, p. 8.

Oregon courts have dealt with virtually identical provisions on a number of occasions, and have concluded that determinations of whether this defense entitles a defendant to summary judgment involves inquiry into two areas: (1) whether the insurer was prejudiced by the insured's failure to give earlier notice; and (2) whether the insured acted reasonably in failing to give notice at an earlier time. *Lusch v. Aetna Cas. & Surety Co.,* 272 Or. 593, 601, 538 P.2d 902, 905

(1975); *Halsey v. Firemen's Fund Ins. Co.,* 68 Or.App. 349, 352, 681 P.2d 168 (1984).

▮ Whether an insurer was prejudiced by late notice turns on "whether the notice . . . was received in time for the insurer to make a reasonable investigation and adequately protect its interest and that of the insured." *Lusch,* 272 Or. at 599, 538 P.2d at 905. In this case, it is undisputed that on April 17, 1990, James Riopelle, Property Manager for BB & S, sent plaintiff a letter advising it of BB & S's discovery. The letter demanded that Port Services pay for BB & S's remediation expenses. Additionally, that letter stated that BB & S was "in the process of uncovering and removing underground tanks" and indicating that these tanks, installed by Port Services some years earlier, were the probable source of the contamination. *See* letter dated April 17, 1990 (attached as Exhibit J to Plaintiff's Memorandum in Opposition).

In the next several months, representatives of Port Services visited the site on a regular basis, and discussed the situation with BB & S representatives. By May of 1990, Port Services determined that the contamination was a result of its activities at the site. *See* Deposition of David Herman, p. 29 (attached as Exhibit A, p. 49 to Defendant's Reply). Throughout this period, tanks and soil were being disturbed and tested. The tanks were then sent to a scrap yard for disposal, and the soil replaced.

Port Services knew as early as April, 1990, that it had a possible claim under this policy. In fact, in the letter which Port Services eventually sent to General Insurance on July 12, 1990, it refers to the April 17, 1990 letter as being a "demand" from the owner. *See* letter dated July 12, 1990, p. 1 (attached as exhibit C to Affidavit of Thomas A. Gordon). In addition, Port Services knew that the evidence relating to the cause of the contamination (the tanks, pipes, fittings, and soil itself) was being disturbed. BB & S's letter of April 17, 1990 "respectfully suggest[ed that Port Services] review the problem with [its] insurance company and/or advisors." *See* letter dated April 17, 1990 (attached as Exhibit J to Plaintiff's Memorandum in Opposition). Yet, without explanation, Port

Services waited for three months and, more disturbingly, Port Services waited until virtually all the contaminated soil was removed and all evidence concerning the tanks, piping systems, and related underground structures was hauled away for scrap.

While plaintiff emphasizes that BB & S, not Port Services, "was in charge of and had control over the excavation and removal of the soil, tanks, and piping systems," (Plaintiff's Memorandum in Opposition, p. 26, fn. 4), that fact cuts against, rather than in favor of Port Services. The letter of April 17 unequivocally indicated that the excavation was in progress and that the contamination appeared to be the fault of Port Services. The fact that Port Services knew that BB & S had already commenced the excavation and that BB & S would have control of the excavation highlights the exigency of the need to notify General Insurance.

The late notice deprived General Insurance of any opportunity to investigate the contamination, to participate in the remedial efforts, and to investigate any possible claims against third parties. The prejudice to General Insurance is clear.

The second issue, of whether the insured acted reasonably in failing to give notice at an earlier time, is equally clear. As outlined above, Port Services was on notice of this claim by mid-April, 1990, and knew that the evidence pertinent to the claim was in the process of being removed. With this kind of knowledge, a delay of even a week would have been inexplicable. A delay until all evidence is accessible only by scouring the scrap yards is unreasonable as a matter of law.

Defendant contends that it is entitled to summary judgment for several other reasons. These arguments center on (1) whether there were any discharges during the policy period; (2) whether the injury was not caused by some other discharge either before or after the policy period; (3) whether the event and/or injury occurred "during the policy period"; and (4) whether coverage is barred due to the provisions of a "premises alienated" exclusion. Because I find that defendant is entitled to summary judgment

as a result of plaintiff's failure to promptly notify defendant of this claim, I do not address the remaining arguments.

Additionally, defendant has moved to strike (docket # 36) certain portions of two affidavits submitted by plaintiff in opposition to defendant's motion for summary judgment. In light of the ruling on the summary judgment motion, no ruling on the motion to strike is necessary. That motion (docket # 36) is therefore stricken.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (docket # 28) should be GRANTED. Defendant's motion to strike (docket # 36) is STRICKEN as moot.

Dated this 6th day of October, 1992.